THE ST. REGIS PAPER Co., Plaintiff, v. THE SANTA CLARA LUMBER Co. and BROOKLYN COOPERAGE Co., Defendants.

(Supreme Court, St. Lawrence Special Term, June, 1900.)

Contract to supply a paper mill with lumber for wood pulp, during ten months of ten successive years — Diversion of lumber, by sale to third party, enjoined — Rescission — Title to unidentified standing timber.

A company, expending about $1,000,000 on a paper mill, made, in 1899, a ten-year contract with a lumber company owning 32,000 acres of woodland for a delivery from the tract in each of ten months of each year, beginning in 1900, of about 1,200 cords of pulp wood, at $9 per cord.   The lumber company agreed not to sell any of said lands or pulp wood during the term of the contract so as to in any way prejudice or prevent its fulfillment.   The contract also provided that the paper mill company should make to the lumber company such advances as it might request during the progress of the work, but stated that the paper mill company " need not advance more than approximately the cost of the work done ".   When the lumber company had, in April, 1900, done $40,000 worth of work and had demanded advances to that amount, the paper mill company had advanced only $25,000.   The lumber company then rescinded and sold half of its tract to a cooperage company, reserving the right to buy the pulp wood on the stump.   It refused to deliver the cut of 1900 and claimed a right to sell it to others.   The paper mill company brought this action to restrain the sale to the cooperage company in

so far as it would disturb the power of the lumber company to fulfill its contract.

Held, that a temporary injunction should be granted upon the usual security, accompanied by a further undertaking that the paper mill company would, if defeated, take the cut of 1900, at $9 per cord, and, on similar terms, all other cuts made during the litigation.

That the contract did not so much contemplate the sale of a vendible thing, replaceable at market rates, as it did the absorption into the product of the paper mill, during ten successive years, of a thing necessary to that product, and that a diversion of the thing necessary was contrary to the spirit of the contract.

That the failure of the paper mill company to make the relatively small advance of $15,000, did not justify a rescission *in toto* of so large a contract — however much it might affect the right of the lumber company to refuse to make further deliveries to a defaulting vendee.

That an injunction would not be refused merely because the paper mill company had recorded its contract and filed a *lis pendens* in the present action, as it was doubtful whether those records would prevent title in unidentified standing timber from passing to a *bona fide* grantee.

Action for an injunction.

Elon R. Brown and Henry Purcell, for plaintiff.

Henry W. Jessup, for defendants.

Russell, J. The plaintiff seeks a temporary injunction to prevent the sale or disposition by the Santa Clara Company to the Brooklyn Company, or any other person, of the lands or pulp wood on some 32,000 acres of land in Franklin county in this State so far as such sale or disposition will disturb the power of the former company to fulfill its contract with plaintiff. That contract is an unusual one. Made on the 29th of August, 1899, the Santa Clara Company agrees thereby to sell and deliver to the plaintiff each year for ten years, beginning June 1, 1900, from 11,000 to 13,000 cords of pulp wood at the rate of about 1,200 cords per month for ten months per year at nine dollars per cord. This seller was not required to deliver in the aggregate more than the wood to be obtained from its 32,000 acres, nor any in place of

that destroyed by fire, nor from any lands taken by the State, they being situate within the Forest Preserve; but the damages sustained by the plaintiff in case of such condemnation should belong to the plaintiff. The seller also agreed not to sell any of said lands or pulp wood during the term of the contract so as in any way to jeopardize or prevent its fulfillment and performance of the contract. The equity of the plaintiff in the contract was declared assignable.

The plaintiff entered into this contract in order to have a current and continuous supply of wood for its pulp and paper mill at Wilna, Jefferson county, N. Y., which mill it began building shortly prior to the contract and which is now nearly finished at a cost of about $1,000,000, and plaintiff needs the cut of some 11,000 cords made the past season under the contract for its initial operations and the yearly supply hereafter, on account of its reliance on the contract and the constant diminution of the general supply of wood and consequent advance in price. Nor does it appear that the plaintiff can now begin its work of paper making, or utilize its plant for the coming year, for want of pulp material, unless it accepts the offer of the Santa Clara Company, as to the present season alone "to sell" to it 13,000 cords at seven dollars and fifty cents per cord delivered at Tupper Lake Junction, the plaintiff to pay the cost of transportation to the place where under the contract the seller was to deliver the wood. This would be a new bargain and not a delivery in pursuance of the contract, and might be a waiver of the right to enforce that contract. The plaintiff has also advanced some $25,000 upon the purchase price of the present season's cut to partially provide for the expense of cutting, barking and hauling, under a provision of the contract hereafter referred to.

Up to April 12, 1900, the seller recognized this agreement to be of binding force upon it, and cut wood enough upon its tract to comply with its burden of obligation for the season of 1900. Assuming it to be still in force, we find an executory agreement operating upon property identified up to a certain quantity, and a contemplated transfer of that property to the plaintiff by future deliveries, not for sale by the plaintiff, but for uses forming a part of the plaintiff's daily business for ten years in the future. We observe a prohibition of the seller to dispose of the property to others, and an exclusion of the power of others to buy. No present title

to definite standing trees passed by the contract; but, assuming that to be done in its faithful performance which equity regards as done in judging of equitable interests, title would flow continuously to the vendee for conversion into a different commodity contemporaneously with observance of the spirit of the agreement by both parties. It would be difficult in case of a breach to forecast the adequacy of an action which should presently ascertain the damages to the plaintiff in the uncertain future of ten years, or the effectiveness of one begun each year for those annually sustained, even if assurance could be given of the continued ability of the seller to respond; and it may be fairly argued that the parties did not contract with reference to a vendible thing which could be replaced at current market rates, but contemplated the absorption into the product of plaintiff's work, day by day, for ten years, of a necessity for that work and product.

But the Santa Clara Company maintains with earnestness that, whether the plaintiff would have any equitable rights under the contract if in force, or not, that contract has no longer any binding power because of plaintiff's default which has justified the act of rescission performed by the Santa Clara Company, and that it has the lawful right to sell the land and wood, under which right it sold the Brooklyn Company a portion of the property. It bases the right of rescission upon the following clause in the contract: " Party of the first part shall commence to cut wood on or about the 15th day of August of each year for the following season's supply. Party of the second part shall make such advances of money to party of the first part as it may request during the progress of the work, but party of the second part need not advance more than approximately the cost of work done." Counsel for defendants urges with force that these provisions were inserted to relieve the Santa Clara Company from the burden of financing the cost of cutting and delivery, which formed over one-third the purchase price, and that the continued performance of this obligation by plaintiff was essential to the right of plaintiff to claim the further execution of the contract, and that its nonperformance justified rescission.

It is true that a party to a contract is not obliged to continue to perform where the other party refuses to comply with concurrent obligations. But the right to stop further delivery to a defaulting party is one thing, while rescission, or complete cancellation of interest *ab initio*, is a very different privilege. The latter would be

a forfeiture of a property interest never favored except where clearly intended by the agreement.   Even then, where retention of the sums paid before default is imbedded in the contract to sell land, subsequent tender gives an equitable right to specific performance unless the situation has changed so that restoration would injure the vendor beyond the contemplated effect of the contract. The right of rescission must depend on the gravity of the interests conveyed and the injury received by the default.

From August, 1899, to May, 1900, the Santa Clara Company expended about $40,000 in getting ready for delivery over 11,000 cords of wood to plaintiff.   Beginning with October 7, 1899, requests were made to the plaintiff to furnish moneys for the cost of such preparation.   Only about $25,000 were furnished, and on the 12th of April, 1900, a written rescission was sent by the Santa Clara Company for the default in not paying all the sums requested from time to time, and the amount advanced tendered back with interest.   As the contract had been recorded, the rescission was recorded also.   By agreement dated April 10, 1900, the sale to the Brooklyn Company of about 16,000 acres of the land was made with the reservation that the latter company should sell to the Santa Clara Company the pulp wood thereon at one dollar per cord on the stump.   The Santa Clara Company still has this season's cut on hand with the power to supply the plaintiff under the contract, but refuses to do so, and claims the right to sell to others.

Doubtless this company had the right to require the plaintiff to furnish the approximate cost of cutting and delivery currently, as needed, but that cost was not a matter of certain calculation in advance, nor was it the sole judge of the reasonableness of the amounts requested.   The contract does not make full and prompt compliance with requests for stated sums, to provide for indefinite outlays, so fundamental as to justify rescission *in toto* because the plaintiff did not acquiesce by payments in strict accord with those requests, whatever effect such noncompliance might have upon the obligation of the Santa Clara Company to fill a delivery of at least 11,000 cords this year.   The deficiency of $15,000 under the terms of a contract, involving the payment of $100,000 or more per year for ten years, was of not sufficient weight to work a freedom from all obligation under that contract.

Nor do I think the request for an injunction must be denied because the plaintiff has recorded its contract and a *lis pendens* in

this action. It may be doubted whether these records are effective to prevent title in standing timber, not separated or distinguished by identification, going to a stranger whose rights of purchase, as exercised, would lead to disturbing occasions and differences in the attempted effort of plaintiff to yearly secure the wood contracted for. Nor could any notice shift upon the shoulders of others the personal burden of cutting, rossing, hauling and delivering, as assumed by the Santa Clara Company.

Nor do I think the court will be shorn of its power to adjudge the duties of the respective parties for the future because the deliveries and payments extend over ten years. No constant inspection of the court will be required if the obligations of each are defined with precision in the final judgment, in case plaintiff succeeds, and we will not assume the danger of a substantial deviation by either before the emergency comes.

The plaintiff, on this application, comes into court with a contract securing large property interests. I cannot in advance of a more perfect hearing than that afforded by affidavits, adjudge those interests to be forfeited, or give the permission of the court to the defendants to partially destroy the efficacy of that contract so that possibly the whole contract may be valueless.

Yet the defendant should be protected from loss so that in case of success the court should not have mistakenly worked them serious injury. In addition to the general security upon temporary injunction, the plaintiff should give a satisfactory undertaking to take the present cut and pay the balance at nine dollars per cord, and any additional value found, in case it does not succeed, without prejudice to defendants' claimed rescission, so that the Santa Clara Company may not suffer loss by depreciation in quality from exposure or otherwise; and also to take on similar terms, during litigation, the future cuts so that this company may reasonably provide for the current efficiency of its plant, and utilize its property as though not disturbed by injunction.

Prepare and serve proposed order, and I will settle its terms after receiving the suggestions of both parties.

Ordered accordingly.